# Illinois Official Reports

## Appellate Court

*Financial Freedom Acquisition, LLC v. Standard Bank & Trust Co.*,
2014 IL App (1st) 120982

| | |
|---|---|
| Appellate Court Caption | FINANCIAL FREEDOM ACQUISITION, LLC, Plaintiff-Appellee, v. STANDARD BANK AND TRUST COMPANY, as Trustee u/t/a Dated March 18, 1991, a/k/a Trust No. 5193, Defendant-Appellant (Unknown Beneficiaries of Standard Bank and Trust Company u/t/a Dated March 18, 1991, a/k/a Trust No. 5193, Lawncastle Cove Condominium Association, United States of America–Secretary of Housing and Urban Development, Unknown Owners and Nonrecord Claimants, Defendants). |
| District & No. | First District, Sixth Division Docket No. 1-12-0982 |
| Filed | June 13, 2014 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a mortgage foreclosure action, the counterclaim filed by defendant trustee, as the owner of the property, alleging violations of the Truth in Lending Act by the mortgagee and seeking damages and rescission of the transaction was properly dismissed, since the Act only allows obligors to seek rescission of a consumer credit transaction, the exculpatory clause the trustee executed precluded the trustee from being an obligor with the right to seek rescission, and the trustee's right to statutory damages was forfeited when it failed to raise the issue on appeal. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-44740; the Hon. Robert E. Senechalle, Jr., Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | John K. Wheeler, of Wheeler & Wheeler, of Westmont, for appellant. |
|---|---|
| | Louis J. Manetti, Jr., of Codilis & Associates, P.C., of Burr Ridge, for appellee. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Justice Lampkin concurred in the judgment and opinion. Justice Gordon dissented, with opinion. |

## OPINION

¶ 1     This appeal arises from a mortgage foreclosure action filed by plaintiff, Financial Freedom Acquisition, LLC (Financial Freedom), against defendant, Standard Bank and Trust Company, as trustee u/t/a dated March 18, 1991, a/k/a Trust No. 5193 (Standard Bank). Thereafter, Standard Bank filed a counterclaim against Financial Freedom alleging violations of the Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (2006)). The counterclaim sought damages as well as rescission of the loan transaction. Financial Freedom filed a motion to dismiss the counterclaim pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)). Standard Bank now appeals from an order of the circuit court of Cook County granting Financial Freedom's motion to dismiss the counterclaim. Standard Bank contends on appeal the circuit court erred because it did not consider: (1) a land trust is a "natural person" under TILA; (2) it timely exercised its right to rescission; and (3) it has a contractual right to rescind the loan. For the reasons that follow, we affirm the decision of the circuit court.

¶ 2                            BACKGROUND

¶ 3     On October 14, 2010, Financial Freedom filed a complaint to foreclose the mortgage on 10420 S. Circle Drive, Unit No. 21B, in Oak Lawn, Illinois (the property), against Standard Bank, a land trust and current owner of the property.[1] Financial Freedom alleged the original lender was Marquette National Bank. Subsequently, Marquette National Bank transferred its interest to Financial Freedom.[2] Financial Freedom complained the mortgage was in default

---

[1]Unknown beneficiaries of Standard Bank and Trust Company, Lawncastle Cove Condominium Association, United States of America–Secretary of Housing and Urban Development, and unknown owners and nonrecord claimants were named as defendants in the underlying foreclosure suit, but they are not parties on this appeal.

[2]The record on appeal did not contain an assignment from Marquette National Bank to Financial Freedom. The parties, however, do not contest this assignment occurred.

due to the death of the borrower, Mary Jane Muraida, which occurred on May 20, 2010. Financial Freedom further alleged the amount due was $38,269.15.

¶ 4    Attached to the complaint were copies of the mortgage and note. The mortgage at issue was an adjustable rate home equity conversion mortgage, a type of reverse mortgage insured by the federal government through the Secretary of Housing and Urban Development. The mortgage provided the mortgagor was Standard Bank. In exchange for an amount up to $237,000, Marquette National Bank was given a security interest in the property. Standard Bank was the sole signatory on the mortgage.

¶ 5    The mortgage contained an exculpatory clause executed by Standard Bank. The exculpatory clause provided in full:

> "This MORTGAGE is executed by STANDARD BANK & TRUST COMPANY, not personally but as Trustee as aforesaid in the exercise of the power and authority conferred upon and vested in it as such Trustee (and said STANDARD BANK & TRUST COMPANY, hereby warrants that it possesses full power and authority to execute this instrument), and it is expressly understood and agreed that nothing herein or in said Note contained shall be construed as creating any liability on the said Trustee or on said STANDARD BANK AND TRUST COMPANY personally to pay the said Note or any interest that may accrue thereon, or any indebtedness accruing hereunder, or to perform any covenant either express or implied herein contained, or on account of any warranty or indemnification made hereunder, all such liability, if any, being expressly waived by Mortgagee and by every person now or hereafter claiming any right or security hereunder, and that so far as the Trustee and its successors and said STANDARD BANK & TRUST COMPANY personally are concerned, the legal holder or holders of said Note and the owner or owners of any indebtedness accruing hereunder should look solely to the premises hereby conveyed for the payment thereof, by the enforcement of the lien hereby created, in the manner herein and in said Note provided or by action to enforce the personal liability of any guarantor, if any."

¶ 6    The note was executed on June 9, 2009, and signed by Muraida and Standard Bank. The note provided Muraida would not be personally liable for the amounts due on the note; instead the future sale of the property itself would be payment of the note. Sale of the property through the lender would only occur upon Muraida's death, if all of Muraida's title in the property were transferred, or if Muraida failed to use the property as her principal residence for more than 12 consecutive months.

¶ 7    On July 19, 2011, Standard Bank, with leave of court, filed an answer to the complaint and a counterclaim. Standard Bank asserted that it entered into a consumer credit transaction with Financial Freedom's predecessor in interest, Marquette National Bank. Standard Bank alleged Financial Freedom failed to deliver material disclosures to Standard Bank as required by TILA. Standard Bank also asserted Financial Freedom failed to respond to the notice of rescission it sent on June 2, 2011, in violation of section 1635 of TILA. 15 U.S.C. § 1635 (2006).[3] Standard Bank sought rescission of the loan, termination of the security interest,

---

[3]The most recent published version of this statute which applies to this matter is from 2006. The section of the statute cited and relied on in this opinion was not affected by any subsequent supplemental amendments.

statutory damages of $4,000 for the disclosure violations, statutory damages of $4,000 for failure to respond to the rescission notice, return of the loan proceeds, and reasonable attorney fees.

¶ 8     On August 9, 2011, Financial Freedom filed a combined motion under section 2-615 and 2-619 of the Code to dismiss Standard Bank's counterclaim. 735 ILCS 5/2-619.1 (West 2010).

¶ 9     On November 2, 2011, OneWest Bank, FSB was allowed to substitute as party plaintiff.[4]

¶ 10    On January 5, 2012, the circuit court conducted a hearing and entered an order which stated, "It is hereby ordered that Defendant Standard Bank and Trust Company, as Trustee u/t/a dated 03-18-1991 a/k/a Trust No. 5193's Counterclaim is dismissed with prejudice." The order did not indicate under which section of the Code the motion was granted.[5]

¶ 11    On February 12, 2012, Financial Freedom filed a motion to voluntarily dismiss the foreclosure complaint. On March 2, 2012, the circuit court dismissed the foreclosure action with prejudice.[6] This appeal was timely filed on March 30, 2012. Accordingly, we have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 12                                    ANALYSIS

¶ 13    Standard Bank asserts three issues on appeal: (1) the circuit court erred in dismissing the counterclaim because Standard Bank, as a land trust, has a right to rescind the consumer credit transaction under TILA; (2) it timely exercised its right to rescind the loan; and (3) it has a contractual right to rescind the transaction. Financial Freedom argues Standard Bank's counterclaim failed to state a cause of action under TILA, as it contains legal conclusions and did not allege any facts which would establish it is entitled to rescission. Particularly, Standard Bank cannot allege it is a consumer under TILA because Standard Bank is a land trust and not a consumer. Financial Freedom further contends Standard Bank cannot allege the property is its principal dwelling. Lastly, Financial Freedom asserts Standard Bank was not a party to the loan transaction and therefore has no right to rescind.

¶ 14    Standard Bank's counterclaim was dismissed pursuant to a motion brought under section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2010). This section permits section 2-615 and section 2-619 motions to be filed together as a single motion, but the combined motion shall be divided into parts which are limited to and specify the single section of the Code under which relief is sought. 735 ILCS 5/2-619.1 (West 2010). In this case, the circuit court did not indicate under which section of the statute it was dismissing Standard Bank's counterclaim. Thus, we note a trial court may be affirmed on any basis that appears in the record. *Gunthorp v. Golan*, 184 Ill. 2d 432, 438 (1998). Under either section 2-615 or 2-619,

[4]The plaintiff will be referred to as Financial Freedom throughout this opinion for the purpose of convenience due to the fact the notice of appeal lists Financial Freedom as the plaintiff-appellee.

[5]No transcript of this proceeding was included in the record.

[6]Neither plaintiff's motion nor the order included a reason for the voluntary dismissal. As stated in its brief on appeal, Financial Freedom received funds sufficient to pay off the loan on January 18, 2012. Standard Bank then deeded its interest in the subject property to a third party, which was recorded on January 26, 2012.

our review is *de novo*. *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶ 64. *De novo* consideration means we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman*, *LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 15    A motion to dismiss pursuant to section 2-619 of the Code admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or which are established by external submissions acting to defeat the complaint's allegations. 735 ILCS 5/2-619 (West 2010); *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993); *Russell v. Kinney Contractors, Inc.*, 342 Ill. App. 3d 666, 670 (2003). In contrast, a motion to dismiss pursuant to section 2-615 of the Code attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. 735 ILCS 5/2-615 (West 2010); *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004).

¶ 16    When ruling on a section 2-615 motion, the relevant question is whether, taking all well-pleaded facts as true, the allegations in the complaint, construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004). A motion to dismiss should not be granted "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009). Illinois is a fact-pleading state; conclusions of law and conclusory allegations unsupported by specific facts are not sufficient to survive dismissal. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996). Section 2-616 of the Code provides that at any time before final judgment amendments to pleadings may be allowed on just and reasonable terms. 735 ILCS 5/2-616 (West 2010). "Leave to amend should be granted unless it is apparent that, even after the amendment, no cause of action can be stated." *Platinum Partners Value Arbitrage Fund, Ltd. Partnership v. Chicago Board Options Exchange*, 2012 IL App (1st) 112903, ¶ 30. Our review will focus on the dismissal of Standard Bank's counterclaim pursuant to section 2-615 of the Code.

¶ 17                    I. Statutory and Regulatory Framework of TILA

¶ 18    In order to assess the sufficiency of Standard Bank's TILA claim against Financial Freedom, we must first examine the statutory and regulatory framework under which it arises. The purpose behind the enactment of TILA was "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (2006); see *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998).

¶ 19    To aid in the understanding and application of TILA, the Federal Reserve Board was vested with the power to implement regulations regarding TILA. *U.S. Bank National Ass'n v. Manzo*, 2011 IL App (1st) 103115, ¶ 25. TILA's implementing regulation is known as Regulation Z. 12 C.F.R. § 226 *et seq.* (2006). "Regulation Z and the official staff commentary are generally dispositive unless contrary to the express language of TILA or otherwise irrational." *Manzo*, 2011 IL App (1st) 103115, ¶ 27 (citing *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232 (2004)).

¶ 20    "Under the Truth in Lending Act, 82 Stat. 146, 15 U.S.C. § 1601 *et seq.*, when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to

disclose important terms accurately." *Beach*, 523 U.S. at 411 (citing 15 U.S.C. § 1635 (1994)). TILA requires creditors to provide borrowers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach*, 523 U.S. at 412 (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638 (1994)). Failure by the lender to deliver these disclosures permits an obligor to rescind the loan transaction. 15 U.S.C. § 1635(a) (2006). TILA provides two types of remedies for violations of the statute: (1) rescission; and (2) damages. 15 U.S.C. §§ 1635, 1640 (2006). For the reasons which follow, under no set of facts can Standard Bank assert a claim of rescission under TILA. As to statutory damages, we find Standard Bank has forfeited the argument.

¶ 21                                    II. Rescission

¶ 22     Standard Bank's counterclaim seeks rescission of the June 9, 2009, loan transaction. TILA includes guidelines with respect to the method of rescission. Section 1635(a) provides "the obligor shall have the right to rescind *** by notifying the creditor, in accordance with regulations of the Board, of his intention to do so." 15 U.S.C. § 1635(a) (2006). The obligor has three business days following the consummation of the transaction to rescind the loan "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so." 15 U.S.C. § 1635(a) (2006). However, if the obligor is not provided the required disclosures, with exceptions not relevant here, "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first ***." 15 U.S.C. § 1635(f) (2006).

¶ 23     Standard Bank contends its filing was timely, as it did not receive disclosures and therefore it is allowed to file its counterclaim within three years of the consummation of the loan transaction. Standard Bank's counterclaim was filed on July 19, 2011, more than three days but less than three years from the consummation of the loan transaction and, therefore, was timely.

¶ 24     Although the counterclaim was timely filed, Standard Bank is not entitled to rescind the loan transaction because it is not an "obligor." Neither TILA nor Regulation Z defines "obligor." Black's Law Dictionary defines "obligor" as "[o]ne who has undertaken an obligation; a promisor or debtor." Black's Law Dictionary 1181 (9th ed. 2009). "The right to rescind may be exercised *only by the obligor, i.e. the person to whom credit is extended*. [Citation.] Thus, an individual who is not named on the Note executed by his or her spouse is not an 'obligor' and does not have a right to rescind." (Emphasis added.) *Ferreira v. Mortgage Electronic Registration Systems, Inc.*, 794 F. Supp. 2d 297, 302-03 (D. Mass. 2011).

¶ 25     In *Barash v. Gale Employees Credit Union*, 659 F.2d 765 (7th Cir. 1981), the court considered a guarantor on the note to be an obligor for the purposes of TILA. In that case, the husband sought to borrow money from the defendant credit union. To obtain the loan, the wife signed as guarantor on the note and executed a wage assignment in favor of the defendant. The court stated the wife undertook "substantial obligations" to the defendant and allowed her to recover statutory damages. *Id.* at 766. To hold otherwise, the court concluded,

"would be to countenance a practice under which a creditor would be the beneficiary of substantial, albeit contingent, obligations running from a guarantor, but would be free of any reciprocal responsibilities whatever." *Id.*

In this case, both Muraida and Standard Bank signed the note. Standard Bank, however, executed an exculpatory clause expressly disclaiming:

> "any liability on the said Trustee or on said STANDARD BANK AND TRUST COMPANY personally to pay the said Note or any interest that may accrue thereon, or any indebtedness accruing hereunder, or to perform any covenant either express or implied herein contained, or on account of any warranty or indemnification made hereunder, all such liability, if any, being expressly waived by Mortgagee and by every person now or hereafter claiming any right or security hereunder ***."

In executing this document, Standard Bank retained no obligation under the note. This complete disclaimer of all liability left Standard Bank "free of any reciprocal responsibilities whatever" and thus with no obligations under the loan documents. *Barash*, 659 F.2d at 766. Further, the record is devoid of any evidence Standard Bank received a benefit from the loan transaction. See *Aurora Firefighter's Credit Union v. Harvey*, 163 Ill. App. 3d 915, 920 (1987). Standard Bank's disclaimer of all liability left Muraida as the only obligor. Because TILA only provides the right of rescission to the obligor of the consumer credit transaction, Standard Bank does not have a right to rescind the loan transaction. 15 U.S.C. § 1635(a) (2006).[7] Consequently, there are no set of facts Standard Bank can assert which would state a claim for rescission pursuant to TILA.

### III. Statutory Damages

Standard Bank's counterclaim also requests statutory damages pursuant to section 1640 of TILA. 15 U.S.C. § 1640 (2006). Financial Freedom contends Standard Bank forfeited this argument by not raising it on appeal. Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) states in relevant part, "Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Due to Standard Bank's failure to

---

[7]We note Regulation Z states, a "consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction." 12 C.F.R. § 226.23 (2006). Courts have found this use of the word "consumer" in Regulation Z, instead of the word "obligor," irrational in the context of a right to rescission. *In re Smith-Pena*, 484 B.R. 512, 528 (Bankr. D. Mass. 2013). "Congress's use of the term 'obligor' and the legislative history relating to the rescission provision evidence a clear intent to protect the interests of consumers who incur an obligation with respect to the credit transaction. [Citation.] Even if Congress's failure to define 'obligor' could be taken as an invitation to fill a legislative gap [citation], the Board's use of the term 'consumer' in 12 C.F.R. § 226.23 is manifestly contrary to U.S.C. § 1635. *** Regulation Z predicates a person's right to rescind on whether he or she has an ownership interest in the property subject to the security interest. Moreover, it excludes 'obligors' who have not encumbered their ownership interest. To the extent 12 C.F.R. § 226.23(a) grants a right of rescission to a person who incurred no obligations on the transaction, it is an irrational construction of 15 U.S.C. § 1635(a) that does not bind this court." *Smith-Pena*, 484 B.R. at 528.

raise the issue of statutory damages on appeal, we find the argument to be forfeited.[8] *Berggren v. Hill*, 401 Ill. App. 3d 475, 479 (2010).

¶ 29   We note the circuit court dismissed Standard Bank's counterclaim with prejudice. Section 2-616 of the Code provides at any time before final judgment amendments to pleadings may be allowed on just and reasonable terms. 735 ILCS 5/2-616 (West 2012). A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be alleged which would entitle the plaintiff to recovery. *Tedrick*, 235 Ill. 2d at 161. In this case, Standard Bank cannot allege a cause of action for rescission as it is not an obligor on the loan. For these reasons, we affirm the decision of the circuit court dismissing the counterclaim with prejudice.

¶ 30                                          CONCLUSION

¶ 31   Accordingly, the decision of the circuit court granting Financial Freedom's motion to dismiss with prejudice is affirmed.

¶ 32   Affirmed.

¶ 33   JUSTICE GORDON, dissenting.

¶ 34   I must dissent because Standard Bank has alleged sufficient facts to support each element required in its claim for rescission.

¶ 35   As the majority observes, when ruling on a section 2-615 motion to dismiss, we must accept all well-pleaded facts as true and must construe them in the light most favorable to the claimant. *Supra* ¶ 16 (citing *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004)).

¶ 36   To assert a claim for rescission under the TILA, Standard Bank must allege that, (1) "in the case of any consumer credit transaction," (2) "a security interest *** is or will be retained or acquired in any property" and (3) the property "is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a) (2006).[9] These three elements are taken straight from the language of the statute which provides in relevant part:

> "Except as otherwise provided in this section, [(1)] *in the case of any consumer credit transaction* (including opening or increasing the credit limit for an open end credit plan) in which [(2)] *a security interest*, including any such interest arising by operation of law, *is or will be retained or acquired in any property* which is used as

---

[8]Despite Standard Bank's forfeiture, we note in passing the claim for damages is potentially barred by the statute of limitations in TILA. See *Carthan-Ragland v. Standard Bank & Trust Co.*, 897 F. Supp. 2d 706, 713 (N.D. Ill. 2012). Section 1640(e) requires a borrower to assert a claim for damages within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e) (2006). In the present case, the alleged violation occurred on June 9, 2009, when the disclosure statements were not delivered. The counterclaim was filed July 19, 2011. Because the counterclaim was filed more than one year after the alleged violation Standard Bank's claim is potentially barred by TILA's statute of limitations. See *id.*

[9]The reverse mortgage at issue in this case was entered into on July 9, 2009, and defendant claims that it was this event that triggered its right to notice. Thus, I cite the statutes and regulations in effect on that date.

[(3)] *the principal dwelling of the person to whom credit is extended*, the obligor shall have the right to rescind the transaction ***." (Emphases added.) 15 U.S.C. § 1635(a) (2006).

¶ 37    When interpreting a statute, we turn first and foremost to the plain language of the statute itself. *People v. Chapman*, 2012 IL 111896, ¶ 23. When the language is clear, we apply it as written. *Chapman*, 2012 IL 111896, ¶ 23.

¶ 38    First, while Standard Bank must allege that it is acting "in the case of any consumer credit transaction" (15 U.S.C. § 1635(a) (2006)), that is different from requiring it to show that it is the consumer in the transaction. The statute expressly states that the word "consumer" is used as an adjective to describe the type of credit transaction to which the TILA applies, and there is no dispute that the case at bar involves a reverse mortgage or that a reverse mortgage is a type of "consumer credit transaction" to which the TILA applies. 15 U.S.C. § 1602(h) (2006) ("The adjective 'consumer', used with reference to a credit transaction, characterizes the transaction ***."). Thus, under the plain language of the statute, Standard Bank has alleged the first element.

¶ 39    Second, Standard Bank alleges that a "security interest" was "retained or acquired" in the property. 15 U.S.C. § 1635(a) (2006). The term "security interest" is used as part of the definition of a reverse mortgage transaction: "The term 'reverse mortgage transaction' means a nonrecourse transaction in which a mortgage, deed of trust, or equivalent consensual security interest is created against the consumer's principal place of dwelling ***." 15 U.S.C. § 1602(bb) (2006). As part of its counterclaim, Standard Bank attached a copy of the mortgage which showed the security interest, so the second element is satisfied.

¶ 40    Third, while Standard Bank must allege that the property in which the security interest is retained "is used as the principal dwelling of the person to whom credit is extended" (15 U.S.C. § 1635(a) (2006)), that is different from requiring it to show that this property is "the principal dwelling of the obligor." If the drafters had meant to state "the principal dwelling of the obligor," then they could have stated that instead of "the principal dwelling of the person to whom credit is extended." The statute uses the word "obligor" to describe the entity that has the right to rescind, and the words "the person to whom credit is extended" to denote the consumer who lives in the dwelling as his or her principal dwelling place. *Id.* The use of two very different terms indicates–contrary to the majority's assumption–that these terms are not interchangeable. *People v. Chapman*, 2013 IL 113510, ¶ 23 (a statute should be construed so that no word is rendered meaningless or superfluous). Thus, under the plain language of the statute, Standard Bank has alleged the third element. Since Standard Bank has alleged all three elements, I must respectfully dissent.

¶ 41    Although all three elements are satisfied, the majority denies Standard Bank's claim on the ground that it is not an obligor as that term is used in the statute. *Supra* ¶ 24. As discussed in the last paragraph, the statute uses different terms to refer to the obligor and to the consumer, thus indicating that they are separate entities. *Cf. In re Smith-Pena*, 484 B.R. 512, 525 (Bankr. E.D. Mass. 2013) (rejecting the argument that the word "consumer" was "the de facto definition of 'obligor,' " the court found the word " 'obligor' to differ from consumer"). The statute states that, in a consumer credit transaction where a security interest is retained "in any property which is used as the principal dwelling of *the person to whom credit is extended, the obligor* shall have the right to rescind." (Emphasis added.) 15 U.S.C. § 1635(a) (2006). In this sentence, the statute juxtaposes the term "the person to whom credit is

extended" against the term "the obligor," indicating that they are completely separate and different terms.

¶ 42    Nonetheless, the majority concludes that the "obligor" is the consumer. *Supra* ¶ 26 (the consumer is "the only obligor"). However, this is a *reverse* mortgage. The consumer does not pay anything to the bank; it is the bank that has an obligation to the consumer. After the mortgage is triggered, then the consumer certainly has no obligation. At that point, the consumer cannot be obliged to do anything, at least not by a court of law.

¶ 43    For these reasons, I would find that Standard Bank has alleged sufficient facts to survive a dismissal motion under the express language of the TILA, and I must respectfully dissent.