2015 IL App (1st) 143114

FOURTH DIVISION
December 24, 2015

No. 1-14-3114

| | | |
|---|---|---|
| LAKEVIEW LOAN SERVICING, LLC, | ) | |
| | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | |
| MARY PENDLETON, | ) | |
| | ) | |
|     Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| DEBORAH ANN REID, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Nos.   12 CH 32727 |
| | ) |        11 CH 18520 |
| MARY PENDLETON and GSF MORTGAGE COMPANY, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| _____ | ) | |
| MARY PENDLETON, | ) | |
| | ) | |
|     Third-Party Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Honorable |
| BANK OF AMERICA NATIONAL ASSOCIATION, | ) | Franklin U. Valderrama |
| | ) | Judge Presiding. |
|     Third-Party Defendant-Appellee. | ) | |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Cobbs concurred in the judgment and opinion.

## OPINION

¶ 1    The question in this appeal is whether an individual who provides a mortgage on her home

as security for a loan, but who is not a party to the loan itself, is entitled to a notice of a right to

rescind the mortgage under the federal Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (2006)). We hold that she is so entitled.

¶ 2    Defendant and third-party plaintiff Mary Pendleton provided a mortgage on her home as security for a loan made to her daughter, Deborah Reid. Pendleton did not sign the promissory note and did not receive any TILA disclosures. Her daughter later defaulted on the loan, and foreclosure proceedings were initiated. In those proceedings, Pendleton attempted to rescind the mortgage, arguing that her right to rescind under TILA had not expired, because she never received the necessary TILA disclosures informing her of that right. The trial court rejected Pendleton's argument, finding that TILA did not afford her a right to rescind because she was not an "obligor" under the statute, and dismissed her counterclaim and third-party complaint seeking rescission of the mortgage. In ruling that Pendleton was not an "obligor" for the purposes of TILA because she was not personally liable for the loan on which her house was mortgaged, the trial court understandably relied on a recently-issued decision of the appellate court in *Financial Freedom Acquisition, LLC v. Standard Bank & Trust Co.*, 2014 IL App (1st) 120982.

¶ 3    But during the pendency of this appeal, our supreme court reversed the judgment of the appellate court in that case and squarely rejected its reasoning. See *Financial Freedom Acquistion, LLC v. Standard Bank & Trust Co.*, 2015 IL 117950, ¶¶ 23, 30. Although *Financial Freedom* involved a reverse mortgage, whereas this case involves a more traditional home-equity mortgage, the supreme court's reasoning applies with equal force in this matter. We thus vacate the trial court's order dismissing Pendleton's counterclaim and third-party complaint and striking her affirmative defenses, and we remand for further proceedings.

¶ 4                          I.  BACKGROUND

¶ 5    Pendleton and Reid co-owned the home that is the subject of the foreclosure proceeding in

this case. On June 25, 2010, Reid executed a promissory note in favor GSF Mortgage Corporation (GSF), showing that GSF had loaned Reid $142,127. Pendleton did not sign the note.

¶ 6     The note was secured by a mortgage on Pendleton and Reid's home, given to GSF's nominee, Mortgage Electronic Registration Systems, Inc. (MERS). The mortgage included a paragraph that stated, in relevant part:

"Any Borrower who co-signs this [mortgage] but does not execute the Note: (a) is co-signing this [mortgage] only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this [mortgage]; (b) is not personally obligated to pay the sums secured by this [mortgage]; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this [mortgage] or the Note without that Borrower's consent."

Both Pendleton and Reid were listed as "Borrowers" under the mortgage, and they both signed the mortgage.

¶ 7     On May 20, 2011, Reid filed a complaint seeking to partition the property between her and Pendleton (trial court case number 11 CH 18520). Pendleton and GSF were listed as defendants in that action. (The partition action is not a subject of this appeal.)

¶ 8     On September 20, 2011, MERS assigned the mortgage to Bank of America, N.A. (Bank of America). GSF endorsed the note to Bank of America.

¶ 9     In March 2012, Pendleton filed a third-party complaint against MERS and Bank of America, alleging a violation of TILA for failing to provide certain disclosures, including notice of her right to rescind the mortgage, and pleading for rescission. See 15 U.S.C. §§ 1635, 1638 (2006); 12 C.F.R. § 226.23(b)(1) (2010).

¶ 10    On August 28, 2012, Bank of America filed a complaint to foreclose on the mortgage (trial

court case number 12 CH 32727). Bank of America alleged that the note had been in default since May 1, 2011. The circuit court granted Pendleton's motion to consolidate Bank of America's foreclosure suit with Reid's partition suit.

¶ 11    After the cases were consolidated, Pendleton filed a combined answer and counterclaim. Pendleton, who was 84 years old at the time, alleged that she and her husband had bought her home in 1969. In 1979, they divorced, and Pendleton received the entire property. Pendleton claimed that, in 1993, she agreed to let Reid live at the house "in exchange for [Reid] helping *** Pendleton with the bills." At the time Reid moved in with Pendleton, "there was no mortgage on the Property."

¶ 12    After Reid moved in, Pendleton told Reid that she wanted to take out a "small loan" to make some improvements to the property. According to Pendleton, she and Reid agreed that, in lieu of Reid paying rent to stay at the house, she would make the payments on this loan. Reid brought Pendleton to a mortgage broker where "Pendleton signed some papers." According to the answer and counterclaim, Pendleton "was unfamiliar with mortgages and did not understand the nature of the transaction." And according to Pendleton's answer in the partition action, these documents led to Reid obtaining an ownership interest in the house, which Pendleton had never intended to give her. Pendleton alleged that Reid refinanced the mortgage in 1995, 1999, 2002, 2004, and 2010. Pendleton claimed that these six transactions "stripp[ed] the Property of the majority of its equity." Pendleton said that she "never received any benefit from any of these loans."

¶ 13    Pendleton alleged that, in June 2010, Reid asked her "to co-sign a new loan to help [Reid] lower her interest rate and/or loan payments." Reid left "some papers" on the dining room table with a note directing Pendleton to sign them. Pendleton signed the documents "because her

understanding was that by signing the documents she could help [Reid] lower her loan payments." The documents were not notarized when Pendleton signed them. According to Pendleton, she never received any copies of the signed mortgage or "copies of any disclosures about the APR, the amount financed, the finance charge, the total of payments, *** the schedule of payments[, or] the notice of her three-day right to rescind the transaction," all of which she alleged were required under TILA. See 15 U.S.C. §§ 1635, 1638 (2006); 12 C.F.R. § 226.23(b)(1) (2010).

¶ 14    Thus, in three different ways—in her third-party complaint against Bank of America before it initiated foreclosure proceedings, and then as both a counterclaim and affirmative defense to Bank of America's foreclosure complaint—Pendleton alleged in the trial court that she had never received the necessary disclosures under TILA. Specifically, Pendleton argued that, because she never received notice of her right to rescind the mortgage within three days of executing it, she could rescind it at any time within three years of its execution. Pendleton also alleged that she exercised that right when she sent "notices of rescission to GSF and Bank of America on or about November 22, 2011."[1]

¶ 15    Before Pendleton filed her answer and counterclaim, Bank of America had assigned the mortgage to Lakeview Loan Servicing, LLC (Lakeview). The trial court granted Lakeview's motion to be substituted into the case in Bank of America's place.

¶ 16    Lakeview moved to dismiss Pendleton's affirmative defense and counterclaim pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2012)). Lakeview raised three arguments: (1) that Pendleton did not sign the note and was thus not an "obligor"

---

[1]  Where a lender fails to give a consumer entitled to rescind notice of his or her rescission right, the consumer can exercise his or her right to rescind at any time within three years of the loan's consummation. 15 U.S.C. § 1635(f) (2006); see *Johnson v. Thomas*, 342 Ill. App. 3d 382, 396 (2003).

entitled to TILA disclosures; (2) that, even if she was entitled to TILA disclosures, her counterclaim was not filed within TILA's three-year repose period; and (3) that Pendleton failed to plead that she had "a plausible ability to tender" payment of the note, which, according to Lakeview, was necessary for her to exercise her right to rescind the mortgage.

¶ 17    In response to Lakeview's motion to dismiss, Pendleton argued that she was entitled to TILA disclosures because TILA's implementing regulation, Regulation Z (12 C.F.R. § 226.1 *et seq.* (2010)), provides that any individual whose property is subject to a mortgage, regardless of whether he or she signs the underlying note, has a right to rescind under TILA. Pendleton also argued that she exercised her right to rescind in November 2011, well within the three-year time period under TILA, and that she was not required to plead her ability to pay the note in order to rescind the mortgage.

¶ 18    The trial court granted Lakeview's motion to dismiss without prejudice, because Pendleton failed to plead her ability to tender the amount of the loan. Pendleton filed an amended answer and counterclaim restating her TILA affirmative defense and counterclaim, and also alleging that she was "ready, willing and able to tender an amount reflecting the benefit she received, *** less all payments made on the account." Lakeview filed an amended motion to dismiss pursuant to section 2-619.1, reasserting the three claims it had made in its initial motion to dismiss.

¶ 19    The trial court granted Lakeview's amended motion to dismiss. The trial court's written order stated, "The Court has considered the parties' briefs and the relevant case law, particularly *Financial Freedom Acquisition, LLC v. Standard Bank & Trust Co.*, 2014 IL App (1st) 120982 and *Westbank v. Maurer*, 276 Ill. App. 3d 553 (2d Dist. 1995), and determined that *Financial Freedom* is controlling as it is a First District Appellate Court decision ***." The court stated that, pursuant to the appellate decision in *Financial Freedom*, Pendleton was not an "obligor"

possessing a right to rescind the mortgage under TILA. The trial court also found that there was no just reason for delaying an appeal of its order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). Pendleton appealed.

¶ 20    While this appeal was pending, the Illinois Supreme Court decided *Financial Freedom*, 2015 IL 117950, ¶ 1, which reversed the appellate court's decision in *Financial Freedom*, 2014 IL App (1st) 120982, on which the trial court had relied.

¶ 21                                                    II.   ANALYSIS

¶ 22    Section 2-619.1 permits a party to file, in one combined motion, both a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)) and a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). 735 ILCS 5/2-619.1 (West 2012). A section 2-615 motion to dismiss attacks the legal sufficiency of a pleading by alleging that the facts stated in the pleading are insufficient to state a cause of action on which relief may be granted. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10. A section 2-619 motion, by contrast, admits the legal sufficiency of the pleading but raises an affirmative defense or other matter that defeats the claim. *Id.* In reviewing either motion, we examine the allegations of the pleading in the light most favorable to the nonmoving party and take all well-pleaded facts as true. *Id.*; *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 18. We apply *de novo* review. *Gatreaux*, 2011 IL App (1st) 103482, ¶ 10.

¶ 23    Pendleton claims that the trial court erred in granting Lakeview's motion to dismiss because she was an "obligor" entitled to TILA disclosures. Bank of America and Lakeview claim that Pendleton was not an "obligor" under TILA, relying primarily on the appellate decision in *Financial Freedom*, 2014 IL App (1st) 120982. They also argue that we should disregard

Regulation Z's expansion of the right to rescind because it conflicts with the plain language of TILA.

¶ 24    The TILA right to rescission at issue in this case provides, in relevant part:

"[I]n the case of any consumer credit transaction *** in which a security interest *** is or will be retained or acquired in any property which is used as the principal dwelling of *the person to whom credit is extended*, *the obligor* shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later ***." (Emphasis added.) 15 U.S.C. § 1635(a) (2006).

¶ 25    The statute, alone, may not clearly answer the question presented here. The language quoted above suggests that Congress made a distinction between the "person to whom credit is extended" (which in this case would only be Pendleton's daughter, not Pendleton herself, as she did not sign the note) and the "obligor" entitled to rescission rights. If the only person entitled to rescission rights was "the person to whom credit was extended," why did Congress use a different term—"obligor"—in the same sentence to describe those with rescission rights? The appellate court majority in *Financial Freedom* made no distinction between the two terms, holding that, under the language quoted above, " '[t]he right to rescind may be exercised only by the obligor, *i.e.* the person to whom credit is extended.' " (Emphasis omitted.) *Financial Freedom*, 2014 IL App (1st) 120982, ¶ 24 (quoting *Ferreira v. Mortgage Electronic Systems, Inc.*, 794 F. Supp. 2d 297, 302-03 (D. Mass. 2011)). The dissent, on the other hand, noted that "[t]he statute uses the word 'obligor' to describe the entity that has the right to rescind, and the words 'the person to whom credit is extended' to denote the consumer who lives in the dwelling as his or her principal

dwelling place. [Citation.] The use of two very different terms indicates—contrary to the majority's assumption—that these terms are not interchangeable." *Id*. ¶ 40 (Gordon, J., dissenting).

¶ 26     The federal regulations implementing TILA are less vague on this question. Regulation Z requires the lender to deliver "two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. § 226.23(b)(1) (2006). It then provides that, "[i]n a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each *consumer* whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction." (Emphasis added.) 12 C.F.R. § 226.23(a)(1) (2010). Regulation Z defines "consumer" as both "a natural person to whom consumer credit is offered or extended," and "*for purposes of rescission \*\*\**, the term also includes a natural person in whose principal dwelling a security interest is or will be \*\*\* acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest." (Emphasis added.) 12 C.F.R. § 226.2(a)(11) (2010).

¶ 27     The Staff Commentary on this regulation further explains, "[I]f a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, *A is a consumer for purposes of rescission*, *even if A is not liable, either primarily or secondarily, on the underlying consumer credit transaction*." (Emphasis added.) 12 C.F.R. pt. 226, Supp. I, § 226.2(a)(11), Note 2 (2010).

¶ 28     Clearly, Regulation Z and the Staff Commentary support Pendleton's position that she was entitled to TILA disclosures, because she was a consumer whose ownership interest in her home was subject to the mortgage. It makes no difference whether she was liable on the note, as long as her principal dwelling was used as security for the loan, which it unquestionably was. But Bank of America and Lakeview argue that the plain language of TILA, as interpreted by the appellate court

in *Financial Freedom*, 2014 IL App (1st) 120982, should control over regulations and administrative interpretation of that statute.

¶ 29    As we have noted, after briefing in this appeal, our supreme court resolved this dispute in *Financial Freedom*, 2015 IL 117950. In that case, the homeowner entered into a reverse mortgage transaction with Standard Bank and Trust. *Id.* ¶ 3. A note was executed showing that Financial Freedom had loaned money to the homeowner. *Id.* The mortgage identified Standard Bank as the mortgagor and borrower and contained an exculpatory clause providing that Standard Bank was not personally liable for any amounts under the note. *Id.* ¶ 4. The note also said that Standard Bank had no personal liability, and that the only means of enforcing the mortgage was "through the property itself." *Id.* ¶ 5. Standard Bank never received any TILA disclosures. *Id.* ¶ 6. Financial Freedom sought to foreclose on the mortgage. *Id.* ¶ 7. Standard Bank counterclaimed that it had not received its TILA disclosures, and that it had rescinded the mortgage. *Id.* The trial court dismissed Standard Bank's counterclaim. *Id.* ¶ 8.

¶ 30    The supreme court reversed the dismissal, holding that Standard Bank had the right to rescind, even though it was not liable on the underlying consumer credit transaction. *Id.* ¶ 46. The court noted that Congress had granted the Federal Reserve Board (Board) the authority to make regulations interpreting TILA (*id.* ¶ 20), and that "the Board's interpretations of TILA are entitled to a great degree of deference." *Id.* ¶ 21. The court also wrote that, according to the United States Supreme Court, " '[u]nless demonstrably irrational, *** Board staff opinions construing the Act or Regulation [Z] should be dispositive.' " *Id.* (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980)). Our supreme court noted that, while TILA did not define the term "obligor," Regulation Z said that "*each* consumer whose ownership interest is or will be subject to the security interest [citation] or is subject to the risk of loss [citation] is entitled to rescind."

(Emphasis in original and internal quotation marks omitted.) *Financial Freedom*, 2015 IL 117950, ¶ 23. The court found that Congress agreed with TILA's expanded definition, because it had been in existence since 1968, and Congress had never amended it, even when it recently "moved authority from the *** Board to the Consumer Finance Protection Bureau to oversee TILA." *Id.* ¶¶ 24-25. Thus, "[b]ased on Regulation Z and the commentary," the supreme court held that "the right to rescind extends to each consumer whose ownership interest is or will be subject to the security interest or is subject to the risk of loss." (Internal quotation marks omitted.) *Id.* ¶ 30.

¶ 31    Applying our supreme court's holding in *Financial Freedom* to this case, Pendleton was clearly entitled to TILA disclosures. Her home was subject to a mortgage that served as security for a consumer credit transaction. As shown by *Financial Freedom*, the fact that she did not have any personal obligations on the underlying promissory note is immaterial.

¶ 32    We recognize that, in this case, Pendleton executed a more traditional home-equity mortgage, unlike *Financial Freedom*, which involved a reverse mortgage. And we acknowledge that the nature of a reverse mortgage was part of the court's analysis in *Financial Freedom*. But the supreme court only discussed the nature of reverse mortgages in order to provide additional reasoning why the appellate court's interpretation of the term "obligor" would be particularly inappropriate in that context. The supreme court explained that, in a reverse mortgage, the lender makes payments to the consumer, not the other way around, thus the "reverse" nature of the mortgage—and thus, under the appellate court's reasoning, *no* consumer would be considered an obligor, and no consumer would be entitled to TILA disclosures. See *id.* ¶¶ 26-28. That point certainly bolstered the supreme court's reasoning, but by no means was it the primary basis for the supreme court's holding. The primary basis was the plain language of TILA and Regulation Z, as well as the staff commentary interpreting TILA (see *id*. ¶¶ 21-25), none of which make a

distinction between a reverse mortgage and the more traditional mortgage at issue in this case. We believe that the supreme court's holding in *Freedom Financial* squarely applies to this case.

¶ 33    Bank of America and Lakeview also cite several federal district court decisions that have declined to use the Regulation Z definition in similar circumstances. See, *e.g.*, *In re Smith-Pena*, 484 B.R. 512, 528 (Bankr. D. Mass. 2013) ("To the extent [Regulation Z] grants a right of rescission to a person who incurred no obligations on the transaction, it is an irrational construction of [TILA] that does not bind this Court."). But in interpreting federal law, we are bound by the decisions of our supreme court and the United States Supreme Court, not lower federal courts. See *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91-92 (2005) (decisions of lower federal courts are persuasive, but not binding, when Illinois court is interpreting federal law); *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 23 (this court is bound by our supreme court's interpretation of federal law "unless and until that conclusion is revisited by our supreme court or overruled by the United States Supreme Court"). And even lower federal courts have not been uniform in deciding this issue. See, *e.g.*, *Dent v. Regions Bank*, No. 1:14-CV-141 (WLS), 2015 WL 329215, at *3-5 (M.D. Ga. Jan. 23, 2015) (relying on Regulation Z definition to find that individual who had executed mortgage, but who had not signed promissory note, was entitled to rescission). The cases cited by Bank of America and Lakeview do not compel us to reach a different result.

¶ 34    We emphasize again that the trial court, in its ruling that is under review, relied on what was then a new decision from the appellate court in *Financial Freedom*, 2014 IL App (1st) 120982. But in light of the supreme court's decision in that matter, the trial court's order of September 20, 2014 can no longer stand. We vacate that order, which dismissed Pendleton's counterclaim and third-party complaint and which struck Pendleton's affirmative defenses.

Although we lack transcripts of the proceedings in the trial court, it appears that the trial court did not rule on the remaining contentions in Lakeview's amended motion to dismiss. Thus, we remand for consideration of those remaining issues and for any other proceedings consistent with this opinion.

¶ 35                    III.  CONCLUSION

¶ 36    For the reasons stated above, we vacate the trial court's dismissal of Pendleton's counterclaim and third-party complaint and its striking of Pendleton's affirmative defenses. We remand for further proceedings.

¶ 37    Vacated and remanded.