**In re Ethel J. DAWSON, Debtor.**

**Ethel J. Dawson, Plaintiff,**

v.

**James B. Thomas, et al., Defendants.**

**Bankruptcy No. 04–00531.**
**Adversary No. 04–10083.**

United States Bankruptcy Court,
District of Columbia.

Oct. 1, 2010.

James Leonardo Neher, Law Office of Jim Neher, College Park, MD, for Plaintiff.

Kenneth S. Kaufman, Garson Claxton LLC, Bethesda, MD, for Defendants.

*MEMORANDUM DECISION RE PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH COURT ORDER OF APRIL 9, 2008*

S. MARTIN TEEL, JR., Bankruptcy Judge.

The instant adversary proceeding was commenced by the filing of a five-count complaint on September 23, 2004, which sought, *inter alia,* rescission of a loan extended by the defendant, James Thomas, to the plaintiff, Ethel Dawson, as well as damages, based upon violations of the Truth in Lending Act ("TILA"). More than three years after this proceeding was commenced, the court ruled that Thomas did, in fact, violate the Truth in Lending Act, and that the plaintiff was entitled to both rescission and damages with respect to finance charges paid. *Dawson v. Thomas (In re Dawson),* 411 B.R. 1 (Bankr. D.D.C.2008). Because the two remedies are largely duplicative, yet somewhat different in their mechanics, and in order to prevent a double recovery, the court's memorandum decision and interim order instructed the plaintiff to elect which of these remedies she intends to pursue. This memorandum decision addresses de-

velopments in the case brought to the court's attention after the court issued its initial memorandum decision.

## I

### FACTS

On April 29, 2008, Thomas filed a status report contending that because Dawson "apparently sold" the real property securing the loan in question, she has waived any right of rescission (Dkt. No. 63). According to the certificate of satisfaction attached to Thomas's status report, by August 30, 2006, Dawson had fully satisfied her loan obligation to Thomas. On April 29, 2008, the same day on which Thomas filed his status report, the debtor filed a notice of election to rescind, advising the court that she sold her house on June 13, 2006, and further stating that approximately $50,000 was placed into escrow by the settlement company pending the resolution of this adversary proceeding (Dkt. No. 64). The debtor likewise filed a statement of attorney fees, specifying that she wishes to have those fees paid from the aforementioned escrow account.

On May 15, 2008, apparently surprised by Thomas's assertion that the loan had been satisfied from the proceeds of the sale, Dawson filed a Motion to Compel Compliance with Court Order of April 9, 2008 (Dkt. No. 66). In that motion, Dawson explains that she believed that the sale proceeds were being held in escrow pending resolution of this adversary proceeding, and that she did not intend to waive any of her claims. Dawson further states that, in response to Thomas's April 29, 2008 filing, she attempted to contact the settlement company, only to learn that the settlement company has apparently gone out of business and the attorney who conducted the settlement has apparently had his license revoked. By her motion, Dawson asks that the court require Thomas to pay the $50,000 he received upon the sale of Dawson's property into the court's registry so that it may be distributed according to the court's April 9, 2008 order.

Thomas opposes Dawson's motion to compel on several grounds. First, Thomas contends that he is already in compliance with the order, observing that the April 9, 2008 order did not require segregation of funds. Second, Thomas notes that, in consultation with Dawson's son, Thomas discounted the pay off amount of the note by approximately 15% and, upon satisfaction of that reduced amount through the sale proceeds, Thomas ultimately recorded a release of the deed of trust. Thomas contends that this constituted a settlement of the dispute, although he acknowledges that Dawson refused to sign a release of her claims in this proceeding in exchange for a release of the deed of trust. Third, Thomas contends that there was no agreement among Thomas, Dawson, and/or the settlement agent that would require the funds used to pay off the note to be escrowed pending resolution of this proceeding. Likewise, there was nothing in this court's April 9, 2008 order that would have required Thomas to pay any money into the court's registry. As such, Thomas states that he is in compliance with the court's order and the requested relief is inappropriate. Finally, Thomas contends that because the property was sold and the deed of trust released, there is nothing left to rescind. As an additional matter, and of unclear legal significance, Thomas takes issue with Dawson's failure to disclose that the sale of the property was to Dawson's son.

## II

### SURVIVAL OF DAWSON'S RESCISSION RIGHTS DESPITE THE SALE OF THE SUBJECT PROPERTY

Section 1635(f) of 15 U.S.C. provides that "[a]n obligor's right of rescission shall

expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first...." Relying on this language, Thomas contends that Dawson's sale of her property has extinguished her right to invoke TILA's rescission remedy in this proceeding. As explained in more detail below, the court concludes that Dawson timely exercised her right to rescission by the filing and prosecution of this adversary proceeding, and she did not waive or extinguish that right by selling her house prior to the court's issuing a decision. Furthermore, because Dawson's right to damages survives regardless of whether her right to rescission has expired under § 1635, the issue is largely—if not entirely—academic.[1]

As noted in the court's memorandum decision, "Dawson's right to rescission was subject to legitimate dispute in this litigation, and Thomas was under no obligation to honor Dawson's request until this court determined that Dawson actually possessed a right of rescission." *Dawson v. Thomas*, 411 B.R. at 41. As the court also noted, however, by insisting upon judicial resolution of whether he violated TILA, Thomas engendered delay. *Dawson v. Thomas*, 411 B.R. at 43. To strip Dawson of the right to rescind after she duly sought to vindicate that right in this adversary proceeding, and when it was Thomas whose challenge to that asserted right necessitated a trial before this court, would be an anomalous result. As a practical matter, however, because the remedy of damages under TILA provides monetary relief equal to that provided for under rescission,[2] and given that Thomas has already released the deed of trust, it arguably would be unnecessary for the court to even reach the issue of whether rescission is still an available remedy.[3] Neverthe-

---

**1.** Although Thomas makes the unsupported contention that the satisfaction of the loan incident to the sale constituted a settlement of this entire adversary proceeding, he does not allege—as he does with rescission pursuant to § 1635—that Dawson's sale of the property extinguished her right to pursue affirmative relief under the damages provisions of TILA. Indeed, although the language of the statute allows for a colorable argument that Dawson's right to rescission terminated upon the sale, no comparable argument is available with respect to the damages remedy.

**2.** Although the court's order provided that Dawson could elect to off set amounts that would be owed to Thomas against the fees and finance charges owed by Thomas to Dawson, by paying Thomas in full, Dawson has waived any right to setoff. In short, there is nothing to set off against, and the court will not require Thomas to remit the proceeds he received incident to the sale into an escrow account merely to vindicate a right to setoff that the debtor has waived.

**3.** Thomas is correct that, on the current record, there is no basis for requiring that he pay $50,000.00 into the court's registry. Had the court been advised of the sale in a timely manner, and had the debtor so requested, the court could have fashioned an appropriate remedy to address the distribution of sale proceeds incident to a sale. *See, e.g., Semar v. Platte Valley Federal S & L Ass'n*, 791 F.2d 699, 702 (9th Cir.1986) (District Court placed proceeds of sale into escrow when property at issue was sold after TILA claim filed but before litigation was concluded). Dawson having instead elected to remain silent, there is currently no judgment outstanding requiring the sale proceeds to be placed into escrow. This does not preclude Dawson from pursuing in a supplemental complaint enforcement of any agreement that required Thomas to place the $50,000.00 into escrow pending a determination of how that $50,000.00 should be distributed. As a practical matter, however, if the amount of principal that was owed to Thomas (and unquestionably a sum to which he is entitled) and that was paid via the $50,000 payment can be readily ascertained, the finance charges and fees recoverable by Dawson should be readily fixed as well. In that event, it might make more sense simply to seek a rescission decree (or monetary judgment) for recovery of the finance charges and fees.

less, rescission is an equitable remedy, restoring the parties to the status quo, with the obligor no longer being liable under § 1635(b) "for any finance or other charge," and the court can enter an injunction in framing a rescission remedy that compels Thomas to refund to Dawson all finance charges paid. That remedy may be more readily enforced than a monetary judgment.

Several courts have considered the question of whether and under what circumstances a borrower's sale of her property terminates her right to rescission under 15 U.S.C. § 1635(f). The cases, however, provide only limited guidance as to the circumstances under which a sale definitively terminates the right to rescind in the event the borrower has made at least some attempt to rescind prior to the sale. At least one court concluded that, in order to preserve the right to rescind notwithstanding § 1635, the borrower was required, at the very least, to send notice of rescission before contracting to sell her home. *See Hefferman v. Bitton,* 882 F.2d 379, 383–84 (9th Cir.1989) (declining to reach the more difficult question of whether a "sale" under § 1635(f) establishes a deadline for sending a notice or for bringing a lawsuit); *Blough v. Young,* 1998 WL 1993382 (Mich.App. Jan.23, 1998) (unpublished) (following *Bitton* and holding that the right to rescission terminated when the borrower contracted to sell the property). In *Meyer v. Ameriquest Mortg. Co.,* 342 F.3d 899 (9th Cir.2003), the court expanded upon the holding in *Bitton,* concluding that a sale of the property, even if it occurs after the borrower sends a notice of rescission and after the borrower commences litigation seeking to vindicate the right, terminates rescission as a cause of action. *Id.* at 902–03 (borrowers amended their complaint after the sale in order to seek damages rather than rescission under TILA, and their claim was ultimately dis-

missed because the one-year limitation on the damages claim had expired). *But see Semar v. Platte Valley Fed. S & L Ass'n,* 791 F.2d 699 (9th Cir.1986) (permitting the borrower to continue prosecution of a TILA rescission claim notwithstanding a post-complaint sale of the property, requiring that the proceeds of the sale be held by the court in escrow, but failing to reach the question of when a sale or a contract of sale would terminate the right to rescission under § 1635). The court has found no case in which the borrower at issue fully prosecuted her rescission claim at trial, yet sold the property prior to the court's issuing a decision.

■ To the extent cases such as *Meyer* interpret § 1635(f) to mean that, regardless of what steps a borrower takes to invoke his right to rescission, that right always terminates once the borrower contracts to sell his home, this court respectfully disagrees. Section 1635 ought not be understood as providing for termination of the borrower's entitlements arising from rescission when a sale occurs *after* that right of rescission has been properly exercised and preserved through the timely commencement of an action to enforce the right.

■ In other words, if a borrower has given timely notice of rescission and sued to enforce that right prior to the expiration of three years without having sold the property, the right of rescission has been **exercised,** and does not later expire after three years have passed or the property is sold. This conclusion follows from reading § 1635(f) in the context of paragraphs (a) and (b) of § 1635, and from examining the title of § 1635(f). The manner in which the right to rescind is **exercised** is set forth in § 1635(a), which provides that "the obligor shall have the right to rescind the transaction ... by notifying the credi-

tor, in accordance with regulations of the Board of his intention to do so." In turn, as noted in *Beach v. Ocwen Federal Bank,* 523 U.S. 410, 412–13, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), § 1635(b) provides that "[w]hen an obligor **exercises** his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void upon such a rescission" (emphasis added), and provides that the lender's receipt of such notice triggers the lender's obligation within 20 days to return to the obligor any money given as a downpayment. Accordingly, timely **exercise** of the right of rescission, and timely commencement of an action to enforce that right if the lender does not comply with its rescission obligations triggered by that exercise of the right of rescission, are all that are necessary to preserve the borrower's entitlements arising from rescission, including the right to a return of any downpayment. When the rights arising from rescission has been preserved in that fashion, neither the subsequent passage of three years after the consummation of the loan transaction nor a subsequent sale of the property terminates those rescission rights. Finally, as the icing on the cake, § 1635(f) itself is entitled "Time limit for **exercise** of right." (Emphasis added.) That title eliminates any ambiguity that § 1635(f) might have were its text read in isolation from the other provisions of § 1635. The title to § 1635(f), and paragraphs (a) and (b) of § 1635, demonstrate that § 1635(f) addresses only the time for **exercise** of the right of rescission. *Meyer* failed to acknowledge this logical conclusion arising from examining § 1635 as a whole and the title of § 1635(f) itself.

Furthermore, treating a timely exercised right of rescission as terminated by a subsequent sale would deprive the borrower of its right to recover damages for the lender's failure to comply with its rescis-

sion obligations. A timely exercise of the right of rescission triggers obligations on the lender's part, and if the lender wrongfully fails to comply with those rescission obligations, the borrower may sue for damages based on that breach. *See Mount v. LaSalle Bank Lake View,* 886 F.Supp. 650, 651–52 (N.D.Ill.1995); *Malfa v. Household Bank, F.S.B.,* 825 F.Supp. 1018, 1020 (S.D.Fla.1993). Treating a subsequent sale as terminating a timely exercised rescission right, thereby eliminating the right to recover damages for breach of the lender's rescission obligations arising from the timely exercise of rescission, only awards the lender for dragging its heels.

Under the *Meyer* interpretation of § 1635, Dawson's right to rescind would have expired while this matter was under advisement regardless of any sale, given that § 1635 provides that the right expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ," and it has been more than three years since the consummation of the transaction. That would be an absurd result, and it stands to reason that if the passage of three years did not terminate Dawson's rescission rights in this case, neither did her sale of the property.

The Court's decision in *Beach v. Ocwen Federal Bank,* 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), demonstrates that the passage of three years does not terminate the right of rescission if, within that three years, the right has been properly invoked and preserved through the commencement and prosecution of a claim. In *Beach,* the Court held that § 1635(f) is a statute of repose, not merely a statute of limitation, and thus that when a borrower failed within three years of the consummation of the loan transaction to give notice of rescission, the rights of rescission could not later be as-

serted defensively by way of recoupment. The Court noted that "[t]he terms of a typical statute of limitation provide that a cause of action may or must be brought within a certain period of time," but that "Section 1635(f) ... takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well." *Id.* at 416–17, 118 S.Ct. 1408. As noted already, however, *Beach* acknowledged that under § 1635(b), if a right of rescission *is* timely exercised (by giving proper notice to the lender), that automatically voids the lender's security interest and obligates the lender to return any downpayment. The lender's rescission obligations are automatically triggered upon timely exercise of the rescission right. When the lender fails to comply with those obligations, and the borrower timely sues to enforce his rescission rights, those rights are not subject to loss at a subsequent date by reason of the passage of three years or, it logically follows, by reason of a sale of the property.

If the obligor sues to enforce an exercised rescission right, the procedures prescribed by § 1635(b) apply "except when otherwise ordered by a court." Accordingly, when timely notice of rescission has been made under § 1635(a), but the lender questions whether the obligor was entitled to rescind, forcing the obligor to sue to enforce the rescission, the court may alter the procedures under § 1635(b). But a necessity to seek court enforcement, and the court's authority to modify the rescission procedures when such court enforcement is sought, do not destroy the timeliness of the exercise of the right of rescission. Indeed, the court's authority to modify the procedures under § 1635(b) is evidence that the court possesses the

discretion to frame a rescission remedy that takes into account the effects of a sale of the property that occurs after the timely filing of a complaint for rescission. For example, when the borrower proceeds to sell the property, the court can still order that the lender is obligated to return any downpayment (part of the rescission obligations to which the lender is subject under § 1635(b)), even though voiding the security interest may be a moot issue. There is no reason why, after the borrower timely exercises his right of rescission, a subsequent sale should obliterate all of the lender's obligations arising from the rescission. At most, the sale language in § 1635(f) can be viewed as setting forth a condition precedent (no prior sale) for exercising and, perhaps, for suing on the right of rescission.[4] Dawson met that condition precedent.

The Court in *Beach*, 523 U.S. at 418–19, 118 S.Ct. 1408, offered an explanation for why Congress might have decided to make § 1635(f) a statute of repose instead of only a statute of limitations for asserting rescission claims (in contrast to the different treatment of damage claims under TILA):

> Since a statutory right of rescission could cloud a bank's title on foreclosure, Congress may well have chosen to circumscribe that risk, while permitting recoupment damages regardless of the date a collection action may be brought. See Board of Governors of Federal Reserve System, Annual Report to Congress on Truth in Lending for the Year 1971, p. 19 (Jan. 3, 1972); National Commission on Consumer Finance, Consum-

---

**4.** Rescission obligations of the lender being automatically triggered upon receipt of a timely notice of rescission, the borrower arguably does not lose his rescission rights by reason of selling the property prior to the commencement of an action to enforce those rescission rights. This case, however, does not present that issue.

er Credit in the United States 189–190 (Dec. 1972).

This makes sense. In a foreclosure sale context, a mortgage that remains subject to rescission could result in a cloud on the purchaser's title. Section 1635(f) provides assurances that the bank can sell the property at foreclosure without there being a risk of rescission clouding the purchaser's title, a risk that could depress the amount that might be bid at the foreclosure sale. As noted in the reports cited in *Beach*, this ultimately can hurt borrowers (because they will be liable for any deficiency arising at a foreclosure sale).[5] Once, however, the borrower has timely exercised his right of rescission, the bank proceeds at its own risk in holding a foreclosure sale for which the sale proceeds may be depressed by reason of the borrower's timely exercised rescission rights. Similarly, if after timely exercising his right of rescission, the borrower voluntarily sells the property, the lender remains on notice that rescission is *not* at an end (by reason of rescission having been exercised within the time limits of § 1635(f)).

In *Bitton*, 882 F.2d at 384, the court of appeals reasoned:

Congress probably enacted § 1635(f) because it worried that allowing a consumer to rescind after selling his residence would cloud property titles and inhibit transactions. See Federal Reserve Board, Annual Report to Congress on Truth in Lending for the Year 1972, reprinted in 119 Cong.Rec. 4596, 4597

(1983) (discussing the policies behind § 1635(f)). Terminating the right to rescind when the consumer irrevocably agrees to sell his property fulfills this policy better than terminating the right upon the actual conveyance. Allowing consumers to rescind or attempt to rescind after entering such a contract implicates the rights of the purchaser and his financing agency and could produce needless litigation and other difficulties. Although Hefferman may have concealed the attempted rescission from the Malcolms, or informed them of her intentions but assuaged their doubts by paying the lenders in full at the conveyance, some sellers might attempt to extract an advantage from their buyers. By threatening to rescind, for example, they might attempt to impede, delay, or abort a sale or to exact tribute from a buyer who worries that the original creditor, if not paid, may demand payment at a later date, a possibility that might cause the buyer's banker to withdraw his loan commitment. If the cutoff for rescission occurs upon the contract to sell, however, these possibilities will be eliminated and all buyers will know exactly what they are facing.

The two reports cited in *Beach* and the report cited in *Bitton* addressed the clouds on title that could arise from the lack of a fixed time for exercising the right of rescission, and on the harm that such clouds on title cause borrowers in the long run.[6]

---

**5.** If a borrower makes a voluntary sale of property and pays off the lender, no cloud on title would arise from a continued existence of a right of rescission, but § 1635(f) still serves a purpose by terminating the right of rescission. That gives the lender assurances that it may treat the loan transaction as not subject to rescission (unless the right was exercised before the sale), and that it may treat itself as no longer under a necessity to

retain records pertaining to any potential assertion of a right of rescission.

**6.** For example, the report of the National Commission on Consumer Finance, Consumer Credit in the United States 189–190 (Dec. 1972) stated:

[T]he rescission period runs indefinitely unless required disclosures have been made and notice of rescission provided. This

For reasons discussed already, the Court in *Beach* was reasonable in construing the reports it cited as addressing the cloud on titles arising from foreclosure sales. The reports make no mention that permitting rescission after a sale contract is entered into could potentially inhibit sale transactions. Accordingly, *Bitton* reads too much into the reports. Its speculations regarding Congressional intent do not seem well founded: TILA does not vest the borrower with a right, based on having timely exercised a right of rescission, to refuse to perform on a subsequently executed contract of sale. Advising the buyer of the TILA right of rescission regarding the existing lien is no different than telling the buyer of some other event that does not alter the buyer's right to enforce the sales contract.

■ Even if the execution of a contract of sale should be treated as the point at which the right of rescission is lost, what is lost at that point is the right to exercise the right of rescission, not the entitlements arising from a prior exercise of the right of rescission. Nothing in the report *Bitton* cites, or in the two reports cited in *Beach*, suggests, as was held in *Meyer*, that once rescission is timely exercised the rights arising from rescission are nevertheless deemed lost if the property is later sold. If the lender sells the property at foreclosure, it has only itself to blame for subjecting the property to a depressed sales price based on the cloud on title arising from the exercised right of rescission.[7] If the borrower sells the property voluntarily, there will be no cloud on title based on the exercised right of rescission: rescission as between the lender and the borrower will have no impact on the purchaser whose rights under the contract are unaltered by TILA and whose title received pursuant to a completion of the sale will suffer no cloud based on continued existence of the right of rescission.

Treating a sale as terminating the borrower's entitlements arising from a timely exercised right of rescission will deprive the debtor of one avenue for raising funds with which to comply with his tender obligation upon rescission being effected in order to preserve his entitlement, arising from rescission, to a return of his down-payment. Congress did not likely intend that result.

## III

## RELIEVING DAWSON OF HER RESCISSION ELECTION

The court had required Dawson to elect to proceed by way of either rescission or a monetary judgment to recover finance charges and fees paid, lest she obtain a double recovery. Dawson elected to proceed by way of rescission with respect to the recovery of finance charges and fees, but that was prior to Thomas making the assertion that the property's sale terminated the right of rescission. The court will not hold Dawson to her election given the uncertainty in the case law as to whether rescission is still available. In addition to recovery of finance charges and fees via rescission under § 1635(b), Dawson is entitled alternatively under 15 U.S.C. § 1640(a)(4) to a money judgment for recovery of all finance charges and fees paid. The court can frame its judgment as permitting Dawson to recover such amounts via rescission, and, in the alternative,

clouds the titles to many residential properties and injures consumers in the long run.

7. When a borrower gives notice of the exercise of a right of rescission when there is

uncertainty whether the right to rescind existed, the lender can protect itself by not foreclosing until it obtains a declaratory judgment that no rescission right existed.

should the court's ruling be reversed on appeal as to the rescission issue, or if the rescission remedy proves less effectual, to recover such amounts via a monetary judgment, subject, however, to the limitation that only one recovery may be had.

## IV

### AMOUNT OF FINANCE CHARGES

The court already determined the amount of finance charges and fees paid prior to the commencement of this adversary proceeding as equaling $14,500.84. Because Thomas was paid an additional sum out of the proceeds of the sale of the property, it will be necessary to fix the amount of finance charges and fees paid incident to that sale. The record does not permit the court to fix the amount of finance charges and fees paid incident to the sale.[8] Dawson's Motion to Compel has sought, in effect, to supplement her complaint to seek recovery of such additional finance charges and fees (as well as seeking an escrowing of the $50,000 paid to Thomas). Thomas's opposition sets forth no good grounds for barring Dawson from supplementing her complaint: he remains free to raise as a defense to a supplemental complaint the defenses he has raised to the motion. Accordingly, Dawson will be permitted to file a supplemental complaint within 14 days after entry of this decision; Thomas will be given 14 days to respond; and a scheduling conference will be held on November 2, 2010, at 9:30 a.m.

At the scheduling conference, Dawson may request the court to enter a final judgment under Fed.R.Civ.P. 54(b) award-ing to Dawson the finance charges and fees paid prior to the commencement of this adversary proceeding, as well as attorney's fees incurred through April 29, 2008, the issue next addressed.

## V

### ATTORNEY'S FEES

The court has determined that Dawson is entitled to recover attorney's fees incurred in connection with this adversary proceeding. This court's order of April 9, 2008, directed Dawson to file a statement of reasonable attorney's fees within 20 days, and provided that Thomas was required to file an objection within 15 days thereafter. In compliance with this court's order, on April 29, 2008, Dawson filed a statement reflecting attorney's fees in the amount of $17,393.16 and costs and expenses in the amount of $1,106.00. Thomas has not opposed the statement of fees and costs. Accordingly, after addressing at the scheduling conference whether the judgment should be made a final judgment under Rule 54(b), the court will enter a monetary judgment for those amounts.

Although Thomas has not directly challenged Dawson's statement of attorney's fees, his May 22, 2008 response to Dawson's motion to compel asserts that this adversary proceeding should be dismissed in its entirety based upon a settlement of the dispute. If Thomas seeks dismissal of this adversary proceeding based upon a settlement of all claims, however, he must file the appropriate motion seeking relief from the court. Having failed to do so, the

---

**8.** Because the loan was an interest only loan, it may be speculated that the principal that remained owing when the property was sold was $35,000.00 (the original principal amount of the loan); that $35,000.00 of principal was paid out of the $50,000.00 that Thomas received on the sale; and that $15,000.00 represents finance charges and interest owed and paid out of the $50,000.00. The parties, however, may take a different view, and I decline to rule on the basis of speculation. Moreover, Dawson ought to proceed by way of a supplemental complaint so that the issues are properly framed.

merit of any request for dismissal is not properly before the court.

### VI

An order follows.