# Illinois Official Reports

## Supreme Court

***Financial Freedom Acquisition, LLC v. Standard Bank & Trust Co.,***
**2015 IL 117950**

| | |
|---|---|
| Caption in Supreme Court: | FINANCIAL FREEDOM ACQUISITION, LLC (OneWest Bank N.A., Appellee), v. STANDARD BANK AND TRUST COMPANY *et al.*, Appellant. |
| Docket No. | 117950 |
| Filed | September 24, 2015 |
| Rehearing denied | November 23, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Robert E. Senechalle, Jr., Judge, presiding. |
| Judgment | Appellate court judgment reversed. Cause remanded. |
| Counsel on Appeal | John K. Wheeler, of Westmont, for appellant. |
| | Louis J. Manetti, Jr., of Codilis & Associates, P.C., of Burr Ridge, for appellee. |
| | James A. Brady and Michelle A. Weinberg, of Legal Assistance Foundation, of Chicago, for *amici curiae* National Consumer Law Center and National Association of Consumer Advocates. |

Justices          JUSTICE BURKE delivered the judgment of the court, with opinion.
                  Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.


**OPINION**

¶ 1     On October 14, 2010, plaintiff, OneWest Bank N.A.[1] filed a complaint against defendant, Standard Bank and Trust Company, as Trustee u/t/a dated 03/18.1991 a/k/a Trust No. 5193 (Standard), along with unknown beneficiaries of that trust to foreclose a mortgage on property held by the trust. In response, Standard filed an answer and counterclaim on July 19, 2011. In the counterclaim, Standard sought to rescind the mortgage, alleging violations of the Truth in Lending Act (TILA). 15 U.S.C. § 1601 *et seq.* (2006). The circuit court of Cook County granted plaintiff's motion to dismiss the counterclaim pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)) and Standard appealed. The appellate court affirmed, with one justice dissenting. 2014 IL App (1st) 120982. We granted Standard's petition for leave to appeal. For the reasons that follow, we reverse the judgment of the appellate court and remand this cause for proceedings consistent with this opinion.


¶ 2                                  BACKGROUND

¶ 3     On July 9, 2009, Mary Jane Muraida (Mary) and Standard entered into a consumer credit transaction for an adjustable rate home equity conversion mortgage, also known as a reverse mortgage, along with an adjustable rate note with Marquette National Bank.[2] The note was secured by a condominium located at 10420 South Circle Drive, Unit 21B, Oak Lawn, Illinois, which was the property held in Trust No. 5193 and Mary's principal dwelling.

¶ 4     The mortgage identified the mortgagor and borrower as "Standard Bank & Trust as Trustee under trust agreement dated March 18 1991 and known as Trust No. 5193" and the note was signed by both Mary and Standard. Attached to and made a part of the mortgage was an exculpatory clause, which provided:

      "This MORTGAGE is executed by STANDARD BANK & TRUST COMPANY, not personally but as Trustee as aforesaid in the exercise of the power and authority conferred upon and vested in it as such Trustee (and said STANDARD BANK & TRUST COMPANY, hereby warrants that it possesses full power and authority to execute this instrument), and it is expressly understood and agreed that nothing herein or in said Note contained shall be construed as creating any liability on the said Trustee or on said STANDARD BANK & TRUST COMPANY personally to pay the said Note or any interest that may accrue thereon, or any indebtedness accruing hereunder, or to perform any covenant either express or implied herein contained, or

---

[1]This action was originally filed by Financial Freedom Acquisitions, LLC. On November 2, 2011, OneWest Bank N.A. was substituted as party plaintiff.

[2]Marquette subsequently transferred its interests to Financial Freedom, which later transferred its interest to OneWest Bank.

on account of any warranty or indemnification made hereunder, all such liability, if any, being expressly waived by Mortgagee and by every person now or hereafter claiming any right or security hereunder, and that so far as the Trustee and its successors and said STANDARD BANK & TRUST COMPANY personally are concerned, the legal holder or holders of said Note and the owner or owners of any indebtedness accruing hereunder should look solely to the premises hereby conveyed for the payment thereof, by the enforcement of the lien hereby created, in the manner herein and in said Note provided or by action to enforce the personal liability of any guarantor, if any."

¶ 5    Under the terms of the note, Standard had no personal liability and the only means of enforcing a security interest was through the property itself. In addition, the note provided that the loan became immediately due upon the death of the borrower, the sale of the property by the borrower, or if the borrower failed to use the property as his/her principal dwelling for more than 12 consecutive months.

¶ 6    Under TILA, in all consumer credit transactions in which a security interest is retained in any property which is used as the principal dwelling of the person to whom credit is extended, the lender is required to provide the borrower with certain disclosure statements, including a notice that the borrower has a right to rescind the transaction until midnight of the third business day following consummation of the transaction. 15 U.S.C. § 1635(a) (2006). A failure to provide such information is a violation which gives the consumer an extended right to rescind for up to three years after the consummation of the transaction. Mary received the TILA disclosures. Although the same documents were prepared for Standard as trustee, plaintiff never delivered them to Standard.

¶ 7    On May 20, 2010, Mary died. On October 14, 2010, plaintiff filed a complaint against Standard to foreclose the mortgage. On June 2, 2011, Standard sent plaintiff a notice that it was exercising its right to rescind the transaction. Plaintiff did not respond. Thereafter, on July 19, 2011, Standard filed an answer to plaintiff's complaint and a counterclaim. In the counterclaim, Standard alleged violations of TILA and sought rescission of the transaction, termination of the security interest, statutory damages for the TILA violations, statutory damages for plaintiff's failure to respond to the rescission notice, and reasonable attorney fees. In response, plaintiff filed a combined motion to dismiss under section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2010). On January 5, 2012, following a hearing, the circuit court ordered the dismissal of Standard's counterclaim with prejudice.

¶ 8    It appears from the record that, on January 18, 2012, Standard provided plaintiff with the full amount due on the mortgage and note and then terminated the trust, deeding its interest in the subject property to a third party. Thereafter, plaintiff filed a motion to voluntarily dismiss its complaint for foreclosure, and on March 2, 2012, the court dismissed the action with prejudice. Standard then appealed the dismissal of its counterclaim.

¶ 9    In the appellate court, Standard argued that, as trustee, it had the right to rescind and it timely exercised that right. In addition, Standard argued it had a contractual right to rescind. 2014 IL App (1st) 120982, ¶ 13. Plaintiff disagreed, arguing that a land trust is not a "consumer" as that term is defined in TILA and, therefore, Standard, as trustee, had no standing to rescind. Plaintiff also argued that Standard had no right to rescind because the property was not Standard's principal dwelling and because Standard was not a party to the

transaction. *Id.* In a divided opinion, the appellate court affirmed the circuit court's judgment. *Id.* ¶ 14.

¶ 10 The appellate court majority analyzed the circuit court's dismissal order under section 2-615 (*id.* ¶ 16) and concluded there was no set of facts under which Standard could assert a claim for rescission under TILA. The majority concluded that, although Standard's counterclaim was timely filed, Standard was not an "obligor" under TILA and, therefore, was not entitled to rescind the transaction. *Id.* ¶ 24. Noting that neither TILA nor Regulation Z (the regulations interpreting TILA) define "obligor," the appellate court looked to the dictionary definition, to find that an "obligor" is " '[o]ne who has undertaken an obligation; a promisor or debtor.' " *Id.* (quoting Black's Law Dictionary 1181 (9th ed. 2009)). Relying on *Ferreira v. Mortgage Electronic Registration Systems, Inc.*, 794 F. Supp. 2d 297 (D. Mass. 2011), the appellate court then held that the right to rescind can "be exercised only by the obligor, *i.e.* the person to whom credit is extended." (Emphasis omitted.) 2014 IL App (1st) 120982, ¶ 24.

¶ 11 According to the appellate court, although both Mary and Standard signed the note, Standard "executed an exculpatory clause expressly disclaiming" any obligations under the loan documents. *Id.* ¶ 26. Thus, the appellate court held "[t]his complete disclaimer of all liability left Standard Bank 'free of any reciprocal responsibilities whatever.' " *Id.* Moreover, the court held there was no evidence Standard received any benefit from the transaction. Accordingly, the appellate court reasoned that Standard's disclaimer of all liability left Mary as the only obligor and because TILA only gives obligors the right to rescind, Standard had no right to rescind. *Id.* For these reasons, the appellate court concluded there was no set of facts Standard could assert to state a claim for rescission. *Id.*

¶ 12 The appellate court also held that Standard forfeited any right it might have had to statutory damages because of its failure to raise the issue on appeal. *Id.* ¶ 28. In a footnote, the appellate court suggested this claim might be barred by the statute of limitations. *Id.* ¶ 28 n.8. Accordingly, the appellate court affirmed the circuit court's dismissal of Standard's counterclaim with prejudice.

¶ 13 Justice Gordon dissented, finding Standard alleged sufficient facts to support its claim for rescission. Relying on the plain language of section 1635(a) of TILA, Justice Gordon wrote that to assert a claim for rescission, Standard needed to allege that: "(1) 'in the case of any consumer credit transaction,' (2) 'a security interest *** is or will be retained or acquired in any property' and (3) the property 'is used as the principal dwelling of the person to whom credit is extended.' [Citation.]" *Id.* ¶ 36 (Gordon, J., dissenting).

¶ 14 With respect to the first element, Justice Gordon opined that, while Standard had to allege a "consumer credit transaction" was involved, this was different than requiring Standard to show it was a consumer in that transaction. Noting that "consumer" is used as an adjective to describe the type of transaction, Justice Gordon concluded that, because a reverse mortgage is clearly a consumer credit transaction, the first element was established. *Id.* ¶ 38.

¶ 15 Justice Gordon found that the second element also was satisfied because Standard attached a copy of the mortgage to its counterclaim which showed that a security interest was acquired in the property. *Id.* ¶ 39. With respect to the third element, Justice Gordon reasoned that the property need not be the principal dwelling of the obligor, but rather the principal dwelling of the party to whom credit was extended. *Id.* ¶ 40. Finding that "the statute uses the

- 4 -

word 'obligor' to describe the entity that has the right to rescind, and the words 'the person to whom credit is extended' to denote the consumer who lives in the dwelling as his or her principal dwelling place," Justice Gordon concluded that TILA's "use of two very different terms indicates—contrary to the majority's assumption—that these terms are not interchangeable." *Id.* Thus, Justice Gordon found that all three elements of a claim for rescission had been alleged by Standard. *Id.*

¶ 16 Justice Gordon also found the majority erred by denying Standard's claim on the basis that Standard was not an "obligor." *Id.* ¶ 41. TILA provides: "in a consumer credit transaction where a security interest is retained 'in any property which is used as the principal dwelling of *the person to whom credit is extended, the obligor* shall have the right to rescind.' " (Emphasis in original.) *Id.* (quoting 15 U.S.C. § 1635(a) (2006)). Justice Gordon concluded that, because the statute juxtaposes the term "the person to whom credit is extended" against the term "the obligor," these terms are not identical. *Id.*

¶ 17 Finally, Justice Gordon pointed out that the transaction here is a reverse mortgage, which means the consumer pays nothing to the bank and, therefore, has no obligations under the transaction. *Id.* ¶ 42. Thus, he concluded that the appellate court majority erred in denying Standard's claim on the ground it had no obligation.

¶ 18 We granted Standard's petition for leave to appeal.

¶ 19 ANALYSIS

¶ 20 Before addressing the issues, we find it helpful to provide some background on TILA. In 1968, Congress enacted TILA (15 U.S.C. § 1601 *et seq.* (2006)) to ensure credit terms are disclosed in a meaningful way so consumers can readily and knowledgeably compare the credit options available to them. *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 11 (1986). From the time of its enactment, Congress granted the Federal Reserve Board (Board) the authority to prescribe regulations to carry out the purposes of TILA. 15 U.S.C. § 1604 (2006). Pursuant to that authority, the Board enacted a comprehensive set of rules, known as Regulation Z (12 C.F.R. pt. 226 *et seq.* (2010)). *Lanier*, 114 Ill. 2d at 11.[3] In addition, official staff interpretations of Regulation Z are published in a commentary. 12 C.F.R. pt. 226, Supp. I (2010). See also FDIC Compliance Examination Manual V-1.4 (May 2015), https://www.fdic.gov/regulations/compliance/manual/5/V-1.1.pdf. The commentary provides more detailed information on disclosures and other actions required of creditors. See *id.* The Compliance Examination Manual, itself, provides "[i]t is virtually impossible to comply with Regulation Z without reference to and reliance on the commentary." *Id.*

¶ 21 Although not binding on the courts, we have held that the Board's interpretations of TILA are entitled to a great degree of deference. *Lanier*, 114 Ill. 2d at 13. In *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 (1980), the United States Supreme Court noted that deference to administrative views is founded upon respect for the expertise of the agency. *Id.*

---

[3]Following the events in this case, Congress transferred the authority to promulgate rules implementing TILA to the Consumer Finance Protection Bureau. See Dodd-Frank Wall Street Reform and Consumer Protection Act, §§1061(b)(1), 1100A(2), 1100H, 124 Stat. 1376, 2036, 2107, 2113. Thereafter, the Bureau issued an interim final rule, which added Part 1026 to Chapter X and established a new Regulation Z. Truth in Lending (Regulation Z), 76 Fed. Reg. 79,768-832 (Dec. 22, 2011). We cite to the version in effect at the time of the occurrence here.

at 566 n.9. For this reason, the Supreme Court has stated that "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation [Z] should be dispositive." *Id.* at 565. See also *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981) (Board's interpretation of its own regulation should be accepted by the courts absent some obvious repugnance to TILA). In addition, Congress has expressed that compliance with Regulation Z and the official staff interpretations must be accorded substantial weight. We recognized in *Lanier*, "[s]ection 1640 evinces a clear congressional determination to treat the Board's administrative interpretations under [TILA] as authoritative." *Lanier*, 114 Ill. 2d at 14. With these principles in mind, we turn to the relevant TILA provisions and the corresponding provisions in Regulation Z, as well as the Official Staff Commentary.

¶ 22    Section 1635 of TILA provides, in relevant part:

"(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the case of any consumer credit transaction *** in which a security interest *** is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction ***." 15 U.S.C. § 1635(a) (2006).

The corresponding provision of Regulation Z relating to rescission provides:

"(a) Consumer's right to rescind. (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, *each consumer* whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ***." (Emphasis added.) 12 C.F.R. § 226.23(a)(1) (2010).[4]

Regulation Z defines "consumer" as:

"a cardholder or a natural person to whom consumer credit is offered or extended. However, for purposes of rescission under §§226.15 and 226.23, the term also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest." 12 C.F.R. § 226.2(a)(11) (2010).

The Official Staff Commentary provides a further definition of "consumer" in this context:

"2. Rescission rules. For purposes of rescission under §§ 226.15 and 226.23, a consumer includes any natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss. Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for purposes of rescission, even if A is not liable, either primarily or secondarily, on the underlying consumer credit transaction." 12 C.F.R. pt. 226, Supp. I, § 226.2(a)(11), Note 2 (2010).

¶ 23    As the appellate court pointed out, TILA states that an "obligor" has the right to rescind but does not define the term. However, based on the corresponding provisions in Regulation Z and the commentary, we conclude Congress did not intend to limit rescission rights to only

[4]The parties also cite to section 226.15 of Regulation Z which contains almost identical wording. This provision, however, relates to open-end credit transactions, not closed-end transactions as the type here.

- 6 -

obligors, as that term is generally defined. Regulation Z and the commentary provide that "*each* consumer whose ownership interest is or will be subject to the security interest" (emphasis added) (12 C.F.R. § 226.23(a)(1) (2010)) or "is subject to the risk of loss" (12 C.F.R. pt. 226, Supp. I, § 226.2(a)(11), Note 2 (2010)) is entitled to rescind. More particularly, the commentary makes it evident that to possess the right to rescind one need not be liable (*i.e.*, an obligor) on the underlying consumer credit transaction. See 12 C.F.R. pt. 226, Supp. I, § 226.2(a)(11), Note 2 (2010).

¶ 24    Section 226.2(a)(11) along with the commentary related to that section have been in existence since 1968. More importantly, Congress has not amended TILA to exclude consumers who are not liable on the underlying credit transaction from having the right to rescind. Accordingly, we must presume Congress agrees with the expanded definition of "obligor" with respect to the right to rescind.

¶ 25    We note, further, that Congress recently moved authority from the Federal Reserve Board to the Consumer Finance Protection Bureau to oversee TILA. The Bureau has adopted a new Regulation Z which includes the identical definitions and commentary. Certainly, had Congress disagreed with Regulation Z or the Official Staff Commentary it would have taken appropriate action to rectify the matter in conformity with its intent.

¶ 26    Moreover, it is important to remember this case involves a reverse mortgage. A reverse mortgage is a nonrecourse consumer credit transaction, secured by the consumer's principal dwelling. Dee Pridgen & Richard M. Alderman, Consumer Credit and the Law § 9A:11 (2014). This type of mortgage is known as "reverse" "because the lender makes the payments to the consumer over a period of years, rather than the consumer making payments to the lender." *Id.* In the case of reverse mortgages, the borrower has not undertaken any obligation to make payments. There is no personal liability of any kind in such a transaction since the only recourse is against the property itself. As such, there is no obligor within the ordinary meaning of that term.

¶ 27    The appellate court majority failed to take into account the fact a reverse mortgage was at issue in this case and the nature of such mortgages. Under the appellate court's reasoning, which limits disclosure and the right to rescind to an obligor in the narrow sense, there would be no disclosure requirements at all when a reverse mortgage is involved because, as explained above, there is no person or organization that is liable for the underlying credit transaction. Reverse mortgages are consumer credit transactions and clearly covered by TILA. In fact, reverse mortgages have disclosure requirements in addition to those applicable to other consumer credit transactions. See 12 C.F.R. §§ 1026.31-1026.45 (2015). Thus, the appellate court erred in affirming the circuit court's finding that Standard has no right to rescind because it was not an "obligor" within the meaning of TILA.

¶ 28    We note, further, that because of the nature of reverse mortgages, the exculpatory clause contained in the mortgage, and relied upon heavily by the appellate court, is simply irrelevant. Standard was not personally liable nor did it undertake any type of obligation because the only recourse in a reverse mortgage is against the property itself.

¶ 29    Finally, we find the appellate court's reliance on *Ferreira v. Mortgage Electronic Registration Systems, Inc.*, 794 F. Supp. 2d 297 (D. Mass. 2011) misplaced. In *Ferreira* and the cases it relied upon, the party seeking to rescind was not a party to the transaction and had not signed the note. Therefore, the cases are factually distinguishable. Further, none of

these cases examined or interpreted Regulation Z or the commentary. Thus, we find their lack of relevant analysis renders them unpersuasive.

¶ 30    Based on Regulation Z and the commentary, we hold the right to rescind extends to "each consumer whose ownership interest is or will be subject to the security interest" or "is subject to the risk of loss." We now consider whether a trustee under a land trust maintains an ownership interest subject to the security interest such that it is entitled to TILA disclosures and may exercise the right to rescind.

¶ 31    A land trust is "a unique creation of the Illinois bar." (Internal quotation marks omitted.) *Passalino v. City of Zion*, 237 Ill. 2d 118, 132 (2009) (Freeman, J., dissenting, joined by Burke, J.). It is a form of land ownership where a trustee holds title to property for the benefit of the true owner/beneficiary of the trust. 5 Illinois Real Property Service, Land Trusts § 31:1, at 9-10 (1989). Over the years, land trusts have "served as *** useful vehicle[s] in real estate transactions for maintaining secrecy of ownership and allowing ease of transfer." (Internal quotation marks omitted.) *Passalino*, 237 Ill. 2d at 132 (Freeman, J., dissenting, joined by Burke, J.).

¶ 32    Generally, the land is deeded by the property owner to the trustee, which is normally a corporate entity. 17 Robert S. Hunter, Illinois Practice § 51:2 (4th ed. 2007). Legal and equitable title of the property rests with the trustee, including the right to transfer and encumber the property. *Passalino*, 237 Ill. 2d at 132 (Freeman, J., dissenting, joined by Burke, J.). However, the trustee must deal with the property and title as the beneficiary directs. 17 Robert S. Hunter, Illinois Practice § 51:2 (4th ed. 2007). The trustee is responsible for maintaining trust documents, including an updated list of beneficiaries. It must respond to directions from the beneficiary and receive communications for the beneficiary from third parties. 5 Illinois Real Property Service, Land Trusts § 32:1, at 9 (1989). The trustee is similarly responsible for giving the beneficiary prompt notice of loans, defaults, foreclosures, and other judicial proceedings. *Id.* § 32:21, at 26. Additionally, the trustee owes fiduciary duties to the beneficiary. 16 Solomon Gutstein & Eileen Murphy, Illinois Practice § 15:237 (3d ed. 2006). Ordinarily, trust documents contain an exculpatory clause which protects the trustee from any personal liability. *Id.* Similarly, trustees "almost universally" require that any contracts, notes, or mortgages they sign on behalf of the trust contain an exculpatory or nonrecourse clause relieving them from personal liability. *Id.*

¶ 33    Conversely, the beneficiary's interest in the real property changes to a personal property interest in the trust. *Passalino*, 237 Ill. 2d at 132. The beneficiary's name does not appear publicly as an owner of record either in title documents or tax records and generally the trustee is required to keep the beneficiary name(s) confidential. *Id.* The beneficiary retains certain ownership rights such as the right of possession, operation, maintenance and control along with the right to use and enjoy the property. *Id.*; 17 Robert S. Hunter, Illinois Practice § 51:2 (4th ed. 2007).

¶ 34    The Official Staff Commentary to Regulation Z addresses land trusts in two provisions: section 226.2(a) which provides: "[c]redit extended to land trusts, as described in the commentary to §226.3(a), is considered to be extended to a natural person for purposes of the definition of consumer" (12 C.F.R. pt. 226, Supp. I, § 226.2(a)(11), Note 3 (2010)); and section 226.3(a), which states:

"10. Land trusts. Credit extended for consumer purposes to a land trust is considered to be credit extended to a natural person rather than credit extended to an organization. In some jurisdictions, a financial institution financing a residential real estate transaction for an individual uses a land trust mechanism. Title to the property is conveyed to the land trust for which the financial institution itself is trustee. The underlying installment note is executed by the financial institution in its capacity as trustee and payment is secured by a trust deed, reflecting title in the financial institution as trustee. In some instances, the consumer executes a personal guaranty of the indebtedness. The note provides that it is payable only out of the property specifically described in the trust deed and that the trustee has no personal liability on the note. Assuming the transactions are for personal, family, or household purposes, these transactions are subject to the regulation since in substance (if not form) consumer credit is being extended." 12 C.F.R. pt. 226, Supp. I, § 226.3, Note 10 (2010).

¶ 35    In section 226.23(a)(1) of Regulation Z, the right to rescind extends to "*each consumer* whose ownership interest is or will be subject to the security interest." (Emphasis added.) 12 C.F.R. § 226.23(a)(1) (2010).

¶ 36    As set forth above, the trustee has legal and equitable title to the property. In fact, the trustee is the only party with an ownership interest in the property since the beneficiary's interest is in the trust itself and is considered personal property. As such, it is the trustee's ownership interest which is subject to the security interest.

¶ 37    Credit extended to a land trust is credit extended to a natural person. Thus, the trustee of the land trust is a consumer, whose ownership interest is subject to the security interest. Accordingly, we conclude Standard, as trustee, was entitled to TILA disclosures and has the right to rescind the transaction. We reverse the appellate court's holding to the contrary.

¶ 38    In this appeal, plaintiff argues in the alternative that any right to rescind which Standard possessed was terminated upon the sale of the property. We disagree. Section 1635(f) of TILA, entitled "Time limit for exercise of right" provides: "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first ***." 15 U.S.C. § 1635(f) (2006). Section 226.23 of Regulation Z provides:

   "(3) *** If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3) (2010).

See also 12 C.F.R. pt. 226, Supp. I, § 226.23(a)(3), Note 3 (2010). However, as Standard argues, section 1635(f) addresses only the time for *exercising* the right to rescind. Because Standard gave notice to plaintiff that it was exercising that right, its right to rescind did not terminate upon the sale of the property.

¶ 39    *Dawson v. Thomas (In re Dawson)*, 437 B.R. 15 (Bankr. D.D.C. 2010), is instructive. In *Dawson*, the plaintiff filed suit to rescind a loan transaction on September 23, 2004. *Id.* at 16. Thereafter, on July 13, 2006, Dawson sold the property securing the loan. *Id.* at 17. Thomas maintained the sale of the property terminated Dawson's right to rescind. *Id.* The court disagreed, concluding that, because Dawson timely exercised her right to rescind, the

subsequent sale did not extinguish that right. *Id.* at 18. As the *Dawson* court explained, if the right to rescind terminated because of a sale subsequent to exercise of the right to rescind, the borrower would be deprived of its rights, under paragraph (b) of section 1635, to recover damages from the lender for a breach of the lender's obligations under that paragraph and the lender would be rewarded "for dragging its heels." *Id.* at 20.

¶ 40    We conclude, as the *Dawson* court did, that when the lender fails to comply with its obligations under paragraph (b), and the borrower timely sues to enforce his rescission rights, "those rights are not subject to loss at a subsequent date by reason of the passage of three years or, it logically follows, by reason of a sale of the property." *Id.* at 21. If a sale of the property subsequent to the exercise of the right to rescind served to extinguish the right, a consumer would lose the right to damages based on the creditor's failure to rescind when it was legally required to do so.

¶ 41    For the foregoing reasons, we conclude that when a consumer timely exercises its right to rescind a consumer credit transaction through proper notice to the creditor, a sale of the property does not terminate a consumer's right to rescind.

¶ 42    Finally, we address Standard's contention that it has a right to statutory damages for plaintiff's breach of its obligations. Because the circuit court dismissed Standard's counterclaim, it did not address this question.

¶ 43    Section 1640 of TILA provides in pertinent part:

"(a) Individual or class action for damages; amount of award; factors determining amount of award

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, *** with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, *** (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or

***

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court;

* * *

(e) Jurisdiction of courts; limitations on actions; State attorney general enforcement

Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation ***. *** This subsection does not bar a person from asserting a

violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." 15 U.S.C. § 1640 (2012).

¶ 44 Initially, we find that the appellate court erred in holding Standard forfeited its claim for statutory damages. The circuit court never addressed this issue and, therefore, there was no order from which Standard could appeal. Further, we find Standard's claim for damages resulting from plaintiff's failure to rescind is not time-barred as plaintiff contends. In *Herzog v. Countrywide Home Loans (In re Hunter)*, 400 B.R. 651 (Bankr. N.D. Ill. 2009), the court held "[f]or claims of failure to effectuate rescission, the date of the occurrence of the violation is the earlier of when the creditor refuses to effectuate rescission, or twenty days after it receives the notice of rescission." *Id.* at 657. Here, notice of rescission was sent to plaintiff on June 2, 2011. Plaintiff did not respond to the notice. Standard then filed its counterclaim in the foreclosure proceeding on July 19, 2011. Clearly, Standard's claim for statutory damages was brought within one year of the occurrence. Accordingly, Standard's claim for statutory damages based on plaintiff's failure to rescind is not time-barred.

¶ 45 CONCLUSION

¶ 46 As set forth above, we hold that Standard, as Trustee u/t/a dated 03/18.1991 a/k/a Trust No. 5193, was entitled to receive TILA disclosures, including notice of the right to rescind after it entered into the consumer credit transaction with plaintiff on October 14, 2010. Because TILA disclosures were not provided to Standard, the three-day right to rescind period was extended to three years. Standard timely exercised its right to rescind when it gave notice to plaintiff on June 2, 2011. Further, because sale of the subject property subsequent to timely and proper notice of the right to rescind does not terminate the right to rescind, Standard may proceed on its claim for damages. We reverse the appellate court judgment and remand this cause to the circuit court for further proceedings consistent with this opinion.

¶ 47 Appellate court judgment reversed.

¶ 48 Cause remanded.

- 11 -